The next matter on our calendar is the United States v. Yesenia Nunez-Tapia. Good morning and may it please the court. My name is Jeremy Ordon and I represent Defendant Appellant Yesenia Nunez-Tapia. This morning I will address point one from my brief that the court improperly precluded the testimony of her brother, Julian Nunez. The government in its case in chief introduced an exhibit, Government Exhibit 15. That exhibit contained several texts between Ms. Tapia and someone referred to as Maguibe  This exhibit and the testimony about it by government witnesses established that texts occurred about seven weeks before Ms. Tapia was arrested on December 6th at JFK with a bottle of marijuana which contained drugs. Government Exhibit 15 was a powerful piece of evidence for the government because it contained texts between Maguibe Amigo, who is Maguibe's friend, and Ms. Tapia because as pointed out by the government the texts were done late at night and ended well past midnight. They established that Maguibe Amigo drove a very long distance from Queens to Ms. Tapia's home again late at night arriving at her home well past midnight and they established that I'm sorry, arrived well past midnight. In addition, Exhibit 15 along with other evidence introduced by the government, for instance when there was testimony that the texts were intentionally deleted by Ms. Tapia one by one, permitted a jury to infer that Maguibe Amigo was bringing drugs to Ms. Tapia seven weeks before her arrest at JFK. It was imperative for the defense to destroy that inference and also simultaneously using Exhibit 15 to demonstrate that Maguibe, who was the person, her boyfriend in the Dominican Republic who had sent her the gifts for his friend Maguibe Amigo to deliver to her, was bringing a bottle of mamawana to the United States in the near future. Ms. Tapia... But is the idea that she was being groomed by being given an empty bottle of this product? That's exactly correct. Well why would anybody dream, what possibility can there be that somebody gives somebody as a gift an empty bottle of something? What do you say? Thank you? Well, there was testimony in the record indicating that the bottle of mamawana, first of all, is a special bottle in the Dominican Republic regarded for its aphrodisiac qualities and frequently given under circumstances where you would want that effect to take place. My client... But the bottle is empty, it's not going to have any effect at all, is it? No, no, no, your honor, there's testimony in the record, in fact I brought this out through the government's witness who testified from the Customs and Border Patrol who was familiar with mamawana, that the sticks and the bark in the bottle are reused. The person with the bottle and the sticks in the bar, sticks in the bark, excuse me, refills the bottle with alcohol and those sticks and bark can be reused multiple times. So with or without the liquid, it is still a gift. But regardless of whether or not it's a useful item or not a useful item, by having her brother testify it would have negated the inference that the jury would otherwise have been able to draw that the gifts that Maguibe was sending her to her contained drugs and specifically obviously the bottle of mamawana. And how would his testimony have done that? Well because as I indicated, he would have testified that he was on vacation in the Dominican Republic and he would have taken the gifts from Maguibe and bring them back to the United States on his return trip so that they could be given to her. And he would have testified that when he entered the airport at the Dominican Republic, he didn't want the liquid to be in the bottle for traveling purposes on the flight, so he emptied the bottle of the liquid contents and he could tell at that point that it did not contain any drugs. And this was really of crucial importance because without that testimony, the only indication that the gift items including the bottle of mamawana didn't have drugs came from my client. And while that is evidence and it comes from her, you know, she is a marginalized witness. She is a very weak witness and she's a weak witness, number one, because she's the defendant. But more importantly, because on direct examination and again on cross-examination, she had admitted to lying to the federal officials at JFK Airport and then she admitted to lying at two subsequent proffer sessions which occurred months later. And I don't think this is noted in the brief or not, but just for clarification, I was not her attorney at the time that the proffer sessions took place. So because she was a severely damaged witness and the only one who could refute this inference that the bottle contained drugs in it, which obviously would have been a very, very potent piece of information when the defense is claiming she didn't know there were drugs in the bottle on December 6th, if the government could create that inference to the jury that she had received a gift in a bottle of marijuana that contained drugs six to seven weeks before she arrived at JFK Airport, that would make her claim and our defense that she lacked knowledge of the contents of the bottle incredibly weak. So to corroborate her testimony, we needed her brother to be able to testify to these proffers, which were then later that day picked up by McGwee Bay Amigo and taken to my client in Pennsylvania, didn't have drugs, was just crucial because without it, the inference that she had drugs seven weeks earlier would destroy her claim that she lacked knowledge of drugs being in a bottle when she arrived at JFK Airport. So as I said, this testimony was of great importance to the defense. Now the court asked for a proffer late on Thursday afternoon after my client had testified about what Julian, her brother, would testify about, and I made the proffer, and the judge original ruling was to deny the request based on bolstering. Now we can argue about whether that was a legal term or a non-legal term, but yes, he was going to corroborate what she said, and it was crucial for him to be able to corroborate what she said, as I've already indicated. The following morning, Friday morning, the proceedings began with the government expressing concern, some concern about the court's ruling. So there was more discussion, additional information was provided by both sides, including me, explaining the importance of his testimony, not only to establish that there were no drugs in the bottle, and therefore to negate the inference that there were, and therefore that she had knowledge on December 6th, but also at the same time to establish that her boyfriend, who had been texting and wooing her for months, and almost insisting that she come visit him in the DR, which she obviously subsequently did, and paid for everything by herself, and there's also evidence in the record of my proffer, I wasn't allowed to introduce the evidence, but the proffer was there, that she had sent him nude photographs of herself, they were sexting, they were using romantic language, I mean, this man was seducing her and playing her and setting her up, and part of that setup was sending her this bottle, a bottle frequently sent by lovers or given by lovers in the Dominican Republic as a gift, and if you receive one gift item and it doesn't have any drugs in it, and then six to seven weeks later you're visiting this person who you're totally, completely enthralled with, and they ask you to bring a bottle, the same type of bottle, back to the United States as a gift for somebody else, it's completely reasonable to do that without knowing what the contents of the, without knowing that the contents of the bottle contained drugs, and so this was, you know, a very important point for the defense, it was denied initially on bolstering grounds, which I submit was completely improper, and the following morning, Friday morning, after the discussion, the court changed its reasoning to relevance. I submit that that was incorrect, that this information was highly relevant as Rule 401 states, relevant evidence is evidence having any tendency to make the existence of a fact more probable or less probable than it would be without the evidence. Now, as I feared, I'm sorry, Your Honor? You've reserved three minutes for rebuttal. Oh, I'm sorry, I didn't realize my time was up, I apologize, yes. All right, thank you, we'll hear from the government. Good morning, Your Honors, my name is Temiday Ganger-Williams, I'm Assistant U.S. Attorney in the Eastern District, and I represent the United States in this appeal. I also represented the government before the trial court. I will start by responding to defense counsel's arguments regarding the exclusion of the appellant's brother's testimony, and separating it out two points. First, the proper testimony was not relevant for the appellant's defense that she was duped into carrying cocaine into the U.S. in December 2015. And the second point, I'll arrive at second, is that it was not relevant for the separate point as to the substance of the October 2015 text messages. Starting with the first point, as to why it was not relevant for the appellant's defense, the two trips that are in question here were distinct in every material way. The October 2015 trip that concerns the proper testimony of the defendant's brother, was regard was, what the proper information was that McGee Bay had given a bottle of mamawana to the appellant's brother to bring in as a gift for the appellant. The contents were dumped out before the appellant ever received those, received that bottle, and furthermore, that bottle was intended for the appellant and for no one else. The appellant had no specific knowledge about the weight or any other characteristics of the bottle, and that's, so that had a different time frame, a different recipient, a different end location, and different circumstances for the bottle that was in question at trial. The December 2015 bottle was concerning a different, totally different scenario. The narrative there that the appellant had given, the surrounding facts, involved numerous individuals that the defendant had said she'd met in a park in the Dominican Republic, who then provided her a bottle. That bottle was intended to be delivered to other people, not the defendant, and not to be consumed by her. The destination of the bottle was not to her and was unknown at the time, and she was also, and at that time, she specifically stated under oath, excuse me, at trial, that she was aware that people in the Dominican Republic often give drugs for people to carry back to the United States. So, the court probably concluded that the two bottles were different in material aspects, and the October 2015 trip... Well, excuse me, this is Judge Jacobs, but what was the evidence at trial dealing with the point made by your adversary that the active ingredient in this product was the liquid that could be rendered active simply by adding alcohol? Your Honor, there was... In other words, yes, it makes no sense that somebody would give somebody a gift of an empty bottle, but your adversary's argument is that it's not quite an empty bottle. It is a product that can be, in which the active ingredient remains in it even if the liquid is removed. Your Honor, it is accurate in the record that the bottle still has use when the ingredients remain in the bottle. What's significant here is that the surrounding circumstance of the two bottles were completely different. The bottle that was in question, and it contained cocaine, was a bottle that was unusually heavy. The defendant testified that it was unusually heavy, and that she had asked her public to make space for it. The bottle was not intended for her. It was intended for someone else. She also stated she had knowledge that people provide drugs to gift to other people. She did not have the name of the individual who received the bottle in the U.S. She, at that time, stated all she had was a phone number, and so I think that the surrounding circumstances of a bottle that was intended for her as a bottle that she was carrying to distribute to someone else that was fully closed, those are material facts that make the bottle, the seven-week incident, irrelevant. I think also, importantly, Your Honor, the question with regard to the substance of the October 2015 text messages are quite important here. The district court did not commit error, by precluding the brother's testimony as it related to the substance of the October 2015 text messages. And counsel, let me just ask, you've argued plain error, but in the record, defense counsel says that the brother would have testified in October of 2015, when we have the Mugabe Amigo texts that are in evidence, that he brought items from Mugabe in the Dominican Republic to the House and Queens, and that's what those texts, it's to explain that exhibit. How did defense counsel not preserve the argument that it was relevant to the exhibit that you had put into evidence? Yes, Your Honor. I think defense counsel mischaracterizes the record in arguing that the brother's testimony was relevant to the deleted October 2015 messages. The existence of those messages established a critical lie that the defendant told agents at the time of arrest, and told the government and proffers after her arrest. The government did not submit that, did not admit that exhibit with regard to the substance of those text messages. It was their deletion that was relevant. The defendant's initial story to the government was that she did not know the individual who had received the bottle filled with cocaine. After the government accessed her phone, what, and she pointed out the number of, the name of the number, cocaine, the government was able to analyze the phone and see that she had been in contact with that individual in October of 2015, which undercuts her story that she was going to talk to that person for the first time when she arrived in December. So defense counsel is wrong that the government, the government never characterized the content of the October 2015 text messages in its case in chief. So the proper testimony of the felon's brother was not to come and explain what was the substance of those messages, because that wasn't part of the defendant, excuse me, the government's case in chief. Instead, the mere existence of those deleted messages and her decision to intentionally delete them was probative of her knowledge about the contents of the cocaine in the marijuana bottle, because she obviously would have to delete those messages before she took her trip, which undercut her and she had never spoken to the person who she intended to give the bottle of marijuana to in December of 2015. And furthermore, in its summation, the government did not challenge the defendant's testimony about the substance of the text. So this argument about Nunez Tapia, the defendant, her brother, excuse me, submitting the proper testimony that he would speak about the substance of the messages, one, that was not brought up before the trial court. And secondly, he would not have, he would not have had firsthand knowledge of the substance of those messages. The messages are between, text messages between the defendant and McGeevey Amigo. Neither of those people is the person who would, who was barred from testifying. The government did respond to this inference point in its rebuttal, but the defendants opened that argument up in his closing, excuse me, defense counsel. It was not the government who drew an inference that the October 2015 trip, or the timing was for nefarious reasons. In summation, defense counsel put forward an argument about why those messages had occurred between defense counsel, excuse me, the defendant and McGeevey Amigo. And then I think under circuit law, the government was within its purview to respond to the argument in its rebuttal. So I think for those two points, the first of which being the bottles, the proper testimony was not relevant to whether or not the defendant had been duped. The factual scenarios regarding the two incidents, the October trip, December trip were significant, excuse me, were different in material ways. And then secondly, the defendant had not preserved the argument, excuse me, the objection that the proper testimony was relevant for the substance. The substance of that, of those messages really became a rife when defense counsel raised that argument in his closing and that the government responded to that argument and appropriate so in rebuttal. Thank you, counsel. I see that my, I think my time is expiring, so I want the court to ask a question. Your time has expired. Thank you, Your Honor. Thank you. We will turn to the defendant. Thank you, Your Honor. You have three minutes for rebuttal. Thank you. Government Exhibit 15 was admitted for all purposes without any limitation or any instructions from the court that it be used for a limited purpose. Having said that, no matter what the government's intent was in introducing that exhibit, it was completely reasonable from the exhibit and from the questions asked with its introduction about the lateness of time, the length of travel, the fact that she deleted texts one by one from her cell phone, totally led the jury to reasonably conclude that there was something nefarious going on with those gifts that were being brought to her well past midnight, ipso facto, that they contained drugs, especially a bottle of marijuana. And the defense had a right to refute that regardless of what the government's intent was. And that's what we attempted to do. Now, as everyone knows, the government gets a rebuttal summation. And time and time again, defendants make their arguments and then the government introduces new information in its rebuttal summation and slams the defense. So the defense has to be prepared for that and deal with that. So in this case, yes, in my summation, I indicated this exhibit, government exhibit 15, had nothing nefarious about it, no drugs, etc. And then if you look what the government did in their rebuttal summation, they totally slammed me with this indicating that the jury should consider the time of the messages, the messages that they ended at 1 51 in the morning, this is the middle of the night. What was this just for delivery of chips? Would anyone drive in the middle of the night to deliver these chips? As you can see, 1 51 four in the morning, clearly the government was suggesting that there were drugs in that bottle. And this was a crucial, crucial piece of evidence in this case. And I was denied the ability to refute that with a strong, objective, decent witness who didn't have his credibility destroyed by the fact that number one, they were defended. But more importantly, that that witness, Ms. Tapia, had testified that she lied to the agents at the JFK, and then she lied again to agents at two, two subsequent proffers. And the government made hay of this on cross-examination, too. So in the end, she was an extremely weak witness. We needed a witness to confront this evidence, to explain this evidence. And that person was her brother, Julian Nunez. We were denied it initially on bolstering grounds, later on relevance grounds. I read for a rule 401 in my opening statement to you. Clearly, clearly this was relevant evidence to prove number one, she was groomed. And more importantly, that that bottle and none of those gifts had any drugs, and she had no reason to suspect whatsoever that the bottle that she was bringing into the United States to JFK Airport on December the 6th had drugs in it. Thank you. I think my time has expired, but I'm happy to answer any questions. Thank you. Before I let you go, Judge Banas, Judge Jacobs, do either of you have a question? Nope. Fine. Not for me. Thank you. Thank you very much. That will conclude oral argument today. I will ask the clerk to adjourn court. Thank you. Thank you. Thank you.